IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| John Benckeser, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-0657-CV-W-FJG |
| | ) | |
| Carpenter's District Council of Kansas City, | ) | |
| Missouri, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

Pending before the Court are (1) Defendant's Motion for Summary Judgment (Doc. No. 19) and Suggestions in Support of Motion (Doc. No. 20); (2) Plaintiff's Cross-Motion for Summary Judgment (Doc. No. 23); and (3) Defendant's Motion to Strike Plaintiff's Affidavit (Doc. No. 24).

**I. Facts.[1]**

Plaintiff John Benckeser brought this action, pursuant to 29 U.S.C. § 1132 under Section 502 of the Employee Retirement Income Security Act ("ERISA") for medical benefits under an employee welfare benefit plan[2]. (See Complaint ¶ 1; Answer, ¶ 1). The

---

[1]In accordance with Local Rule 56.1(a), "[a]ll facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." See Ruby v. Springfield R-12 Public School Dist., 76 F.3d 909, 911 n. 6 (8th Cir. 1996). Accordingly, all facts set forth in the Court's statement of facts will be taken from defendant's motion for summary judgment (Doc. No. 19) and defendant's suggestions in support (Doc. No. 20) unless otherwise specified.

[2]A copy of the Summary Plan Description explaining the benefits of the Carpenters' District Council of Kansas City and Vicinity Health Plan (the "Plan") was filed with Doc. No. 18 as an Addendum to the Joint Administrative Record (Doc. No. 17) and labeled as Exhibit 12. The administrative record in this matter has been filed as Exhibits 1-12 (Docs. No. 17,18).

Welfare Fund ("the Plan") is a trust fund administered for the purpose of providing health, sickness, accident, hospitalization, medical, and other related benefits for eligible participants. (See defendant's statement of facts, ¶ 2 (Doc. No. 20); Summary Plan and Description and Plan Document, Exhibit 12, ¶7, p. 46). The Plan is self-funded by contributions from various employers in accordance with their collective bargaining agreements with the Carpenters' District Council of Kansas City and Vicinity of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO. (See Summary Plan Description and Plan Document, Exhibit 12, ¶6 p. 46). The contributions made are held in trust to pay benefits to covered participants. Id.

Plaintiff is the step son of Mark Rogers, who is a covered participant under the Plan. (See defendant's statement of facts, ¶ 3). From February 21, 2002 until May 13, 2002, Plaintiff underwent medical treatments, including chiropractic services, arthroscopic surgery and physical therapy for an injury to his left shoulder. (See defendant's statement of facts, ¶ 4). These treatments totaled approximately $16,000.00. (See plaintiff's statement of facts, ¶ 26). Plaintiff was 22-years-old and attending school at Longview Community College at the time he underwent medical treatment. (See defendant's statement of facts, ¶ 6, ¶12). From February 21, 2002 until May 13, 2002, plaintiff was living with his stepfather and was a dependent of his step-father at the time he underwent treatment. (See plaintiff's statement of facts, ¶ 19). On January 14, 2002, plaintiff originally registered for 11 credit hours of course work at Longview Community College for the Spring Semester of 2002. (See defendant's statement of facts, ¶ 12). Plaintiff later dropped a five credit hour course and ended up completing 6 credit hours for the 2002 Spring Semester. Id. Plaintiff was enrolled in 12 credit hours or more in previous semesters but not during the semester in which he received the medical treatments at issue. (See plaintiff's statement of facts, ¶ 21).

On or about July 24 through July 26, 2002, the Welfare Fund Office mailed the plaintiff a series of correspondence denying benefits under the Plan for medical treatments

2

received by plaintiff from February 21, 2002 through May 13, 2002. (See defendant's statement of facts, ¶ 11). Those correspondence stated the reason for denial was because plaintiff was not a covered dependent due to the fact that he was not a full-time student at the time he underwent medical treatment. Id.

Dependents of a covered participant are eligible to receive benefits under the Plan if they fall within the definition of an eligible dependent. The Plan states "[e]ligible dependents shall include the following:"

1. An active or retired employee's lawful spouse.
2. Each unmarried child of an active or retired employee who has not attained age 19.
3. Each unmarried child of an active or retired employee who has not attained age 23 and who is primarily dependent upon the active or retired employee for full support and maintenance and whose time is devoted principally to attending school or college as a full-time student. To be eligible, each such dependent child must make application on a form supplied by the Fund Office.
4. A child whom coverage must be provided because of a Qualified Medical Child Support Order ("QMCSO").
5. Each unmarried child of an active or retired employee who has attained age 19 but who is incapable of self-sustaining employment by reason of mental retardation or physical handicap and is primarily dependent on the eligible employee for support and maintenance.
6. Any step-children living in your home, adopted children, "children placed for adoption" and foster children, provided such children are dependent upon the active or retired employee for support and maintenance (See Summary Plan Description and Plan Document, Exhibit 12, pp. 67).

The Plan does not define full-time student and the words "devoted principally to attending school." Also, the Plan does not include any age, marital status, or educational status qualifiers in the step-child provision.

The Plan provides that:

The Board or Committee shall have the authority to interpret, construe, and apply all terms of the Summary Plan Description/Plan Document, the Amended Agreement and Declaration of Trust, and/or any rules and regulations established by the Trustees including, but not limited to, provisions concerning eligibility for, entitlement to and/or nature, amount and duration of benefits, in reaching a decision on the claimant's request for

3

review of the denial of benefits. (See Summary Plan Description and Plan Document, Exhibit 12, p. 41).

On September 27, 2002, plaintiff requested an administrative appeal. (See defendant's statement of facts, ¶ 13; Plaintiff's letter, Exhibit 5). An appeal hearing was held on February 4, 2003. (See defendant's statement of facts, ¶ 14; Appeal Transcript, Exhibit 10). Plaintiff was represented by counsel at the hearing. Id. On February 8, 2003, the Appeals Committee denied plaintiff's claim. (See defendant's statement of facts, ¶ 16; Denial letter, Exhibit 11). The Appeals Committee's letter to plaintiff stated that a stepchild over the age of eighteen must satisfy the full-time student requirement in order to be an eligible dependent under the Plan. Id. Plaintiff then filed suit on July 22, 2005.

## II. Summary Judgment Standard.

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56©; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Lower Brule, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. Rather, "the disputes must be outcome determinative under prevailing law." Id. (citations omitted).

4

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." Matsushita, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

### III. ERISA Standard of Review

A court reviewing an ERISA plan administrator's decision denying benefits should apply a de novo standard of review unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If a plan gives the administrator discretionary authority, then a court should review a plan administrator's decision only for abuse of discretion. Id. at 115; Cox v. Mid-America Dairymen, Inc., 965 F.2d 569, 571 (8th Cir. 1992), aff'd after remand, 13 F.3d 272 (8th Cir. 1993).

The parties in this case disagree on which standard of review applies. Defendant argues the Plan language gives clear discretionary authority to the Board or Committee to interpret the Plan's terms, thus an abuse of discretion standard applies. Not surprisingly, plaintiff argues there is no discretionary language in the Plan, thus de novo review applies. The Plan language at issue is the following:

> The Board or Committee shall have the authority to interpret, construe, and apply all terms of the Summary Plan Description/Plan Document, the Amended Agreement and Declaration of Trust, and/or any rules and regulations established by the Trustees including, but not limited to, provisions concerning eligibility for, entitlement to and/or nature, amount and duration of benefits, in reaching a decision on the claimant's request for review of the denial of benefits.

Defendant argues that since the language gives the board or committee authority

5

to interpret, construe, and apply the terms of the Plan, then that means the board or committee has discretionary authority. Plaintiff, however, asserts that this language does not contain the words "discretion," "discretionary," "sole," or "exclusive" and that courts have found discretionary authority only where such terms are presented. Since the Board or Committee does not have discretionary authority, plaintiff states it did not have the authority to assign definitions to terms such as "full-time student" in the Plan.

The Court concludes the Plan language is sufficient to confer discretionary authority. The abuse-of-discretion standard applies only if the policy contains "explicit discretion-granting language." Bounds v. Bell Atlantic Enter. F.L.T.D. Plan, 32 F.3d 337, 339 (8th Cir. 1994). However, the Eighth Circuit has not found that specific words be present in order to confer discretionary authority. In Lakey v. Remington Arms Co., 874 F.2d 541, 544 (8th Cir. 1989), the court concluded the Plan conferred discretionary authority where the language stated that the defendant "attempts to interpret the more usual situations that may arise in the application of the principles of the [severance pay] policy." [internal quotations omitted]. Thus, the court held that because the defendant had the "power to construe the uncertain terms in its benefit plan, the district court was correct to find RAC's [defendant's] decision...lawful." Id. At 544-45. Additionally, in Kennedy v. Georgia-Pacific Corporation, 31 F.3d 606, 608-09 (8th Cir. 1994), the plan stated defendant "shall be the Plan Administrator and shall be solely responsible for the administration and interpretation of this Plan." The court rejected plaintiff's argument that the Plan did not specifically grant the defendant discretionary authority to interpret the plan provisions. Id. In Lakey and Kennedy, the Plan language did not contain the words "discretion" or "discretionary" and in both instances the language conferred discretionary authority to the Plan Administrators. The Court finds that the Plan language at issue in this case is no different. While the words "discretion," "discretionary" or "sole" are not present, the Board or Committee has the authority to interpret and construe the Plan terms which constitutes

6

discretionary authority. The Plan clearly states "[t]he Board or Committee shall have the authority to interpret, construe and apply all terms of the Summary Plan Description/Plan Document."

The Court also finds that the cases plaintiff relies on in support of de novo application are distinguishable. For instance, in Baxter v. Lynn, 886 F.2d 182 (8th Cir. 1989), the Plan language stated the Trustees had "the final authority to determine all matters of eligibility for the payment of claims." The court in Baxter concluded such language "does not grant to the trustees the authority to construe ambiguous terms" because the language merely describes the trustees' mandatory role in accepting or rejecting claims submitted. However, the language in Baxter differs from the language at issue in this case because the Plan language here specifically granted the Board or Committee with the authority to interpret, construe, and apply all terms in the Plan. Thus, the Plan at issue in this case provides discretionary authority to the Plan Administrator to interpret the plan terms; therefore, the Court will apply the abuse-of-discretion standard.

Under the abuse-of-discretion standard, a court applies a deferential standard of review to an administrator's plan interpretation and fact-based eligibility determinations. See Donaho v. FMC Corporation, 74 F.3d 894, 898 (8th Cir. 1996) (abrogated on other grounds by Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003)). The deferential standard does not allow a reviewing court to reject an administrator's discretionary decision simply because the court disagrees. Id. The proper inquiry is "whether the plan administrator's decision was reasonable; i.e., supported by substantial evidence." Donaho, 74 F.3d at 899. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 924 (8th Cir. 2004). A court will affirm an administrator's reasonable interpretation of a plan. Cox v. Mid-America Dairymen, Inc., 13 F.3d 272, 274 (8th Cir. 1993); Finley v. Special Agents Mut. Benefit Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992).

7

To properly apply the deferential standard of review, "a reviewing court must be provided the rationale underlying the trustee's discretionary decision." Cox, 965 F.2d at 574.  A court's decision as to whether a plan administrator abused his or her discretion must be based on facts known to the administrator at the time the benefits claim decision was made.  Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997); Collins v. Central States, Southeast and Southwest Areas Health & Welfare Fund, 18 F.3d 556, 560 (8th Cir. 1994).  When applying the arbitrary and capricious standard of review, the Court only considers evidence that is part of the administrative record.  See Barnhart v. UNUM Life Ins. Co. of America, 179 F.3d 583, 590 (8th Cir. 1999); Layes v. Mead Corp., 132 F.3d 1246, 1251 (8th Cir. 1998).  The court cannot substitute its own weighing of the conflicting evidence for that of the plan administrator.  Cash, 107 F.3d at 641; Cox, 965 F.2d 569, 573 (8th Cir. 1992).

**IV. Discussion.**

This is an ERISA action arising out of the denial of benefits to the stepchild of a covered Plan participant.  The central issues in this case are (1) whether plaintiff falls within the definition of an eligible dependent under the Plan and (2) whether the Appeals Committee abused its discretion when it determined that plaintiff was not a eligible dependent, and thus not covered by the Plan.

**A.     Plaintiff's Motion for Summary Judgment (Doc. No. 23)**

Plaintiff argues that even if an abuse of discretion standards applies, the Plan Administrator's determination was unreasonable because: (1) plaintiff is a full-time student whose time is devoted principally to attending school, and (2) plaintiff squarely fits within the stepchild provision under the Plan.

With regard to plaintiff's full-time status as a student, plaintiff states that the drafters of the plan do not define "full-time student" or the language "whose time is devoted

8

principally" to attending school. Plaintiff points out that he was devoted to attending school full-time because he was enrolled in 12 credit hours or more in previous semesters, enrolled in classes during the summer, and did not have any full-time or permanent employment while attending school. Although plaintiff admits that he was not enrolled in 12 credit hours during the semester in question, plaintiff states he was only enrolled in 11 credit hours in his last semester because he only needed 11 credit hours to complete his associate's degree. Plaintiff does not believe he should have paid for an extra course "just so he would have had 12 hours to appease the arbitrary and baseless demands of his insurance company." (See Doc. No. 23, p. 7). Plaintiff also states that he only dropped 5 of the 11 credits because plaintiff learned that this course would not transfer to his bachelor's degree program at Central Missouri State University. (See Doc. No. 23, pp. 7-8; Exhibit 5). As a result, plaintiff enrolled in a summer course after the Spring Semester to complete his associate's degree. Based on these facts, plaintiff argues it is clear he was principally devoted to attending school full-time.

In addition, plaintiff argues that defendant's definition of a full-time student as being enrolled in 12 credit hours is arbitrary. Plaintiff points out if the drafters of the Plan had intended a rigid 12-hour enrollment requirement, the drafters could have easily defined full-time student as one being enrolled in 12 credit hours. Because the drafters did not include a 12 credit hour requirement in the Plan, plaintiff argues interpreting "full-time student" as requiring 12 credit hours renders the Plan language, "whose time is devoted principally," meaningless. Finally, plaintiff notes the exclusion of the 12 credit hour requirement from the Plan demonstrates the drafter's intention to include a broader group of student-dependents rather than only students taking 12 credit hours.

Defendant responds the plan provision specifically requires a dependent to be a full-time student as well as a dependent principally devoted to attending school or college. Defendant asserts both elements must be met in order to be covered and plaintiff failed to

9

meet the full-time element. Defendant notes, for example, that a dependent might satisfy the full-time student requirement while at the same time holding down full-time employment. In such a case, defendant states that the dependent could be a full-time student taking 12 credit hours but the dependent's employment may be his or her principal pursuit in which case the dependent may not qualify as a covered dependent under the Plan.

As to plaintiff falling within the definition of a step-child under the Plan, plaintiff argues that the Plan is clear that any step-child living at home and dependent on the covered participant is an eligible dependent. Plaintiff argues the drafters could have included qualifiers such as age, marital status, or educational status.

Defendant counters that plaintiff's interpretation renders absurd results and construes the six provisions in the Plan as completely independent of each other. Defendant states that the Plan Administrator within its discretion reasonably construed the step-child provision as requiring a step-child over the age of 19 but under the age of 23 to be a full-time student in order to be an eligible dependent under the Plan.

This Court finds that while plaintiff's interpretation of the full-time student provision is another reasonable interpretation under the Plan, the Plan Administrator's decision is not unreasonable. The Court cannot find a Plan Administrator's decision unreasonable simply because it finds evidence to support another reasonable interpretation of the Plan language. See McGee, 360 F.3d at 924 (stating that a plan administrator's discretionary decision is not unreasonable merely because "a different, reasonable interpretation could have been made."). The Court also concludes that plaintiff's interpretation of the step-child provision would lead to inconsistent results as discussed more fully below. For the foregoing reasons, plaintiff's motion for summary judgment (Doc. No. 23) is **DENIED.**

B. **Defendant's Motion for Summary Judgment (Doc. No. 17)**

Defendant argues that the Appeal Committee's interpretation of the Plan was reasonable under the Finley five-factor test. The Court agrees. The five Finley factors are

10

Case 4:05-cv-00657-FJG    Document 28    Filed 04/27/07    Page 10 of 15

(1) whether the Plan Administrator's interpretation is consistent with the goals of the plan; (2) whether the Plan Administrator's interpretation renders any language in the Plan meaningless or internally inconsistent; (3) whether the interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the Plan Administrator interpreted the words at issue consistently; (5) whether the interpretation is contrary to the clear language of the Plan. Finley, 957 F.2d at 621. The Court will analyze defendant's motion for summary judgment under the five factors laid out in Finley.

The first Finely factor is whether the Appeal Committee's interpretation of the Plan was consistent with the Plan's goals. Although the Plan's goals are not expressly stated, defendant argues that the goal of the Plan is to provide benefits to its covered participants and their eligible dependents. Plaintiff responds that the Plan's intent is to provide coverage to traditional students who are dependents of their parents and are actively pursuing an education. Without any expressly stated intentions, the Court will attempt to decipher the Plan's intent by examining the Plan's provisions. Because the Plan defines the term "eligible dependent" and does not allow all dependents to receive coverage, it is evident that the Plan intended to limit the dependents that may or may not receive benefits under the Plan. Although it is also evident that the Plan intended to provide coverage to dependents who are students, the Plan also intended to limit which dependent students were covered by including an age qualifier and the words "full-time" and "devoted principally to attending school or college." Therefore, the first factor weighs in favor of finding the Appeal Committee's decision reasonable.

The second factor examines whether the interpretation rendered any language in the plan meaningless or internally inconsistent. Defendant points out that allowing plaintiff to receive benefits under the step-child provision renders the Plan inconsistent. As the Plan reads, any step-child no matter what age, marital status, or educational status may receive benefits as long the step-child is dependent on the stepparent and is living at home.

However, defendant notes that a biological child could not receive benefits under those same circumstances. Rather, a biological child would have to be a certain age or attending school full-time and a step-child would not be subject to the same requirements. Thus, defendant argues that following plaintiff's interpretation renders the Plan inconsistent. Plaintiff counters that if the drafters of the Plan intended a rigid 12 hour requirement, then the drafters could have easily defined "full-time student" as requiring enrollment in 12 credit hours. Plaintiff also states defendant's interpretation would render the words "whose time is devoted principally" to attending school meaningless. The Court agrees with defendant that following plaintiff's interpretation would render the Plan language inconsistent, namely that a biological child could not obtain benefits while a stepchild could receive benefits under the same circumstances or allowing a dependent student to obtain benefits no matter the student's credit hours. See Bond v. Cerner Corp., 309 F.3d 1064 (8th Cir. 2002) (rejecting plaintiff's construction of the plan language where it would lead to results clearly not intended by the plan because it would mean plaintiff was entitled to a greater level of benefits after termination than plaintiff received while working part-time).

The third factor of whether the Committee's interpretation conflicted with the substantive or procedural requirements of the ERISA statute is not an issue in this Case; thus the Court will not address the third factor.

As to the fourth factor, the issue is whether the Appeals Committee interpreted the words at issue consistently. Plaintiff argues a consistent interpretation of the Plan would require the Appeals Committee to deny coverage to a student in the following situations: (1) a student attending classes during a summer semester when he or she was not enrolled in 12 credits or (2) a student not enrolled in 12 hours due to an injury[3]. The Court rejects

---

[3] If the Court agrees with defendant's interpretation, plaintiff requested discovery on this issue in his brief to determine if there are any students who fit into these categories and were granted benefits. The Court denies plaintiff's request for discovery on this issue because it finds that the two situations discussed by plaintiff are factually dissimilar to the facts of this Case.

plaintiff's interpretation of the Plan because these situations are factually dissimilar to the facts here.  The Court also notes that even if such situations have arose in the past or will arise, then presumably the Plan Administrator would conduct a benefit determination for those students on a case-by-case basis considering the individual facts and circumstances of those cases.  Thus, the Court refuses to sanction an inquiry into whether benefit determinations were made based on factually dissimilar situations.

The last factor is whether the Appeals Committee's interpretation is contrary to the clear language of the Plan.  Plaintiff argues that the language of the Plan clearly states any dependent who has not attained the age of 23, is a full-time student, and whose time is devoted principally to attending school is an eligible dependent.  Arguably, plaintiff has a valid point because the Plan does not specify any 12 credit hour requirement in the provision nor does the Plan define a full-time student as being enrolled in 12 credit hours. It also appears plaintiff's time was devoted to principally attending school in that he took a full course load in previous semesters and even enrolled in classes during the summer semester. The Court notes plaintiff's interpretation is a reasonable one under the language of the Plan.  However, it is not the Court's role under an abuse of discretion standard to substitute its own reasonable interpretation of the Plan when substantial evidence exists to support the Appeals Committee's reasonable interpretation of the Plan.  Although the Plan does not specify a 12-credit hour requirement, the Appeals Committee's discretion to impose such a requirement is not in direct contradiction to any Plan provisions.  Thus, the Court finds that the Appeal's Committee interpretation of the Plan was not contrary to the Plan's clear language.

Further, it was not unreasonable for the Appeals Committee to require a student to be enrolled in 12 credit hours when most colleges and universities require 12 credit hours in order to be considered a full-time student.  A simple of review of Metropolitan Community College's Catalog, which applies to the Longview campus where plaintiff attended, defines

13

a full load as "carrying at least 12 credit hours during the fall and spring semesters and at least six hours during the summer term." Metropolitan Community College Catalog 2006-2007, p. 17 *available at* www.mcckc.edu.[4] In addition, certain congressional statutes such as 38 U.S.C. 3688(a)(4) define full-time course work at a college or university as at least 12 credit hours in order for veterans to receive educational benefits. While another reasonable interpretation of the Plan existed, surely the Appeals Committee's interpretation is not unreasonable when congressional statutes require 12 credit hours and 12 credit hours is a common requirement for students to acquire full-time status at most colleges and universities including plaintiff's institution.

"When a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, it should not be disturbed." Parkman v. Prudential Insurance Co., 439 F.3d 767, 772 (8th Cir. 2006)(citing Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1180-81 (8th Cir. 2001); McGee, 360 F.3d at 924 (8th Cir. 2004). Therefore, as the administrative record demonstrates that defendant's decision was reasonable, was supported by substantial evidence on the record, and was not an abuse of discretion, defendant's motion for summary judgment (Doc. No. 17) is **GRANTED.**

### C. Motion to Strike Plaintiff's Affidavit (Doc. No. 24)

---

[4]The Court recognizes that the Metropolitan Community College Catalog ("MCC Catalog" ) was not a part of the joint administrative record. The Court, however, takes judicial notice of the MCC Catalog. Under Fed. R. Evid. 201(b), a court may take judicial notice of a fact which is not subject to reasonable dispute if it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. The MCC Catalog is capable of accurate and ready determination by simply referring to the school's website and records and can be determined independently of plaintiff's case. See MacGregor v. Mallinckrodt, Inc., 373 F.3d 923, 934 (8th Cir. 2004)(holding that it was proper for the district court to take judicial notice of the employer's size where (1) size was readily obtainable from employer's or tax records, (2) judicially noticed fact was not actually challenged or capable of reasonable challenge, and (3) employer's size could be determined independently of employee's case through widely available records).

14

Defendant seeks to strike plaintiff's affidavit because the information contained within the affidavit is not a part of the administrative record. However, upon review of the record, the Court concludes that the information within plaintiff's affidavit is a part of the record and may be properly considered by this Court. For instance, plaintiff's reference in his affidavit about applying his credits earned at Longview Community College to his bachelor's degree program in Central Missouri State University is discussed in Exhibit 5 of the administrative record. Therefore, defendant's motion to strike plaintiff's affidavit (Doc. No. 24) is **DENIED**.

## V. Conclusion

For the reasons set forth above, (1) Plaintiff's Motion for Summary Judgment (Doc. No. 23) is **DENIED**; (2) Defendant's Motion for Summary Judgment (Doc. No. 19) is **GRANTED**; and (3) Defendant's Motion to Strike Plaintiff's Affidavit (Doc. No. 24) is **DENIED**.

**IT IS SO ORDERED.**

Date: 4/27/07　　　　　　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge